UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

**MONIKA GOLDEN,**
    Plaintiff,

v.

**THE NINETEENTH JUDICIAL CIRCUIT OF FLORIDA**, a political subdivision of the State of Florida,
    Defendant.
_____

**PLAINTIFF'S INITIAL COMPLAINT**
Jury Trial Demanded

Plaintiff, Monika Golden, by counsel, sues the Defendant, The Nineteenth Judicial Circuit of Florida, and for her Complaint alleges:

PARTIES

1. Plaintiff Monika Golden (herein "Golden") is a female individual, born and raised in 1970 in Mexico City, who, while employed by the Defendant and as a result an automobile accident in February 2023, became disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act of 1973. Plaintiff is Mexican-American.

2. The Nineteenth Judicial Circuit of Florida (herein "Nineteenth Judicial Circuit") is a state agency and body corporate of the State of Florida. The Defendant is also a "public entity" within the meaning of 42 United States Code §12131(1) and is the recipient of federal funding and thus, has waived any claim to sovereign immunity under the Eleventh Amendment.

## JURISDICTION

3. The Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1337 as this action arises under federal law. The Court has supplemental jurisdiction over the FCRA claim pursuant 28 United States Code §1967.

4. The events described in this Complaint all occurred in the Southern District of Florida.

5. With respect to allegations arising under Title VII and the ADA, Plaintiff received a Right to Sue on January 29, 2024. Because her Charge of Discrimination was co-filed with the Florida Commission on Human Relations and more than 180 have passed without a finding of "no cause" her claim under the Florida Civil Rights Act may be brought in this action.

## GENERAL ALLEGATIONS

6. Plaintiff began her employment with the Nineteenth Judicial Circuit in January, 2023 as a Spanish Court Interpreter .

7. Prior to her employment with the Defendant, Plaintiff has served as an independent contractor as a Spanish Linguist, for the Department of Justice since in or around 2020 and owned her own interpreter & translating firm called US Legal Word Experts, LLC. Plaintiff has been interpreting and translating since at least 1999 or longer.

8. On February 11, 2023, Plaintiff was involved in a severe automobile accident that resulted in numerous injuries including a concussion which caused her not to be able to regulate her temperature dizziness, headaches, and pain; four (4) herniated discs

       affecting her neck and back which caused nerve damage (which reflects in different parts of her body), severe swelling and pain in Plaintiff's body which in turn causes her blood pressure rise; numbness in left arm and tightness/spasms in her back, and cramping and twitching in the feet and toes and injury to both knees which required on-going medical care and treatments. Plaintiff even had to have an an injection in her left foot. Plaintiff was advised by her medical providers that she requires a titanium fusion, or in the alternative, to try other forms of therapy and pain management prior to disk surgery. Plaintiff also suffers from sinus complications but such complications were not a result of the accident and existed even prior to her employment with the Defendant to which they were made aware. Plaintiff also had various dental issues which caused severe pain and contracted COVID in 2023 which required that she take time off from work.

9. Despite all of the medical setbacks from the car accident and dental issues, Plaintiff managed to score a 92% ninety-two percent in the interpreter's written test.

10. Immediately after Plaintiff's accident, she was demoted and began to be treated differently than other employees, specifically, Rosario Valdiviezo (1099, female, Peruvian-American), Roland Funcke (1099, male, Peruvian-American), Patricia Denski (employee, female, Peruvian-American), Evans Latortue (1099, male, Haitian-American), Carlos Rivera Navas (1099, male, Colombian-American), and Agueda Epperly (employee, female, Brazilian-American) in terms of training opportunities, work assignments, and supervision.

11. Plaintiff's supervisor, Susan Wiggins, began demanding that Plaintiff use Peruvian Spanish rather than Mexican Spanish and would not allow her to interpret by herself.

12. Although, Epperly was authorized to interpret without supervision, despite the fact that she had no prior interpreting experience and was hired roughly one and a half months after Plaintiff was hired and obtained a lower score than Plaintiff on the interpreter's written test.

13. On or around February 18, 2023, Plaintiff approached Wiggins about the discriminatory treatment. She complained to Wiggins that she was having a hard time focusing during the job as she was receiving numerous text messages demanding her to use one word over another. Plaintiff continued to voice her complaints to Wiggins until Wiggins sent out an e-mail addressing the situation and informing staff to wait until the conclusion of the interpretation to make comments.

14. Then, Wiggins appointed Funcke and Denski to supervise and monitor Plaintiff's use of language, despite the fact that both individuals had failed the mandatory certification oral test for court interpreters on numerous occasions.

15. Specifically, Funcke had failed the certification exam at least eleven (11) times over the span of six-teen (16) years. Funcke even bragged about failing (unable to become certified) the exact same version of the test twice and Tallahassee will no longer allow Funcke to take the oral interpreting test in the State of Florida due to his multiple attempts and failures.

16. Moreover, Denski had failed (unable to get certified) the exam on or about three (3) times and has solicited colleagues, including Plaintiff, to ghostwrite documents for

      her due to her inability to do so herself despite the fact that having the "ability to fluently speak, read and write in Spanish and English" is a job requirement for employment as a State Court Interpreter in the State of Florida.

17. Additionally, Denski did not meet the threshold as a "provisionally approved interpreter," and as per the Florida Supreme Court Rules and Regulations, should have had her "provisionally approved" status immediately revoked after her last test on or around April 27, 2023 but it was not.

18. Contrary to that, special arrangements were made for Denski to keep her "provisionally approved status" with Tallahassee despite her failure to meet the required threshold. Losing this status means that Denski would have had to start her certification efforts from scratch.

19. Plaintiff also informed Wiggins that some of the word usage that her colleagues wanted her to use was incorrect and other word usage was not utilized in her native country of Mexico and/or did not have the same meaning for a native of Mexico as for a Peruvian native.

20. Plaintiff was ignored and was told to use the words she had been told to use by her colleagues. Plaintiff was also instructed by Wiggins to stop researching words.

21. Plaintiff informed Wiggins that she was interfering with Plaintiff's interpreters oath by prohibiting her from interpreting to the best of her ability and knowledge.

22. Plaintiff was continuously assigned less desirable work, under strict supervision, while her co-workers were authorized to work on felonies without supervision, and more severely, without certification and/or without meeting test results thresholds.

23. Plaintiff was denied opportunities to cross-train or visit other sites unlike her colleagues.

24. In eight months, after multiple requests, Plaintiff was only allowed to go to the Stuart courthouse a couple of times. Out of those few times, Plaintiff only trained approximately two times, for about one hour each time and that time included showing Plaintiff the courthouse premises. The rest of the time Plaintiff had to do the less desirable work.

25. Plaintiff was even reprimanded for providing assistance during her lunch hour after she was asked by Denski to cover a hearing Denski was uncomfortable interpreting, while Denski was not reprimanded for passing her assignment off to Plaintiff.

26. Wiggins pressured Plaintiff into not going to her medical appointments while Denski and Epperly would leave the office early and Valdiviez would arrive late and leave work early for no reason and with no consequence to them.

27. It got so bad that Plaintiff would be reprimanded by not only Wiggins, but also colleagues, for how she leans over, for not standing up straight enough (even though this was caused due to medical issues), or not standing on a specific spot in a courtroom even though other colleagues were allowed to stand anywhere they pleased.

28. Unlike Funcke and Valdiviez who solicits business from attorneys at the courthouse, Plaintiff could not even have a friendly conversation at the courthouse with work colleagues who did not work at the courthouse. Specifically, an attorney witnessed how poorly Plaintiff was being treated by her colleagues, Funcke and Valdiviez, and

wanted to talk to her about it. Plaintiff wanted to talk to the attorney but was prevented from doing so by Funcke and Valdiviez as they would spy on her and eavesdrop on her conversations.

29. Plaintiff once again, and on multiple occasions, approached Wiggins to complain again of the discriminatory treatment, but Wiggins did nothing.

30. Since Plaintiff's complaints were not being addressed by her supervisor, Plaintiff submitted a formal complaint to Tallahassee, including the information that Wiggins was violating the Florida Supreme Court's Rules for Interpreters by allowing Funcke to interpret felonies without being registered in Florida and without a certification.

31. She also informed Tallahassee that she was being actively discriminated against by being prohibited from using her Mexican Spanish to interpret; by receiving less favorable treatment then that of her colleagues; and by violating the interpreter's ethic's rules as Plaintiff had to use words which were incorrect in usage and/or translation and/or used in a manner that they were not used in Mexico.

32. For several months prior to August, 2023, and including August 2023, Plaintiff, in tears, would talk to Sandra Feijoo Negron, a Spanish interpreter from the 10th Judicial Circuit, to tell her that Wiggins was harassing her and that she had reported Wiggins practices to Tallahassee. Negron then told her supervisor, Toni Godinez who then called Wiggins and reported this information to her.

33. Beginning in or around July, 2023, Wiggins began making negative comments and sending negative e-mails to HR concerning Plaintiff's necessary medical appointments.

34. Not only would Wiggins complain to Plaintiff about missing work, she would pressure her not to go to her medical appointments, interrogate her about her medical appointments, and refused to make reasonable accommodations for her.

35. Plaintiff's work arrangements, were moved from upstairs to a downstairs area which had old carpet previously been damaged by water. As a result, Plaintiff began to experience respiratory issues including congestion and headaches.

36. On or around August 14th, 2023 Plaintiff requested that the air conditioner filter be changed. Wiggins said no.

37. Plaintiff also requested a cushiony chair to help alleviate pain from her injuries and, unbeknownst to Plaintiff at the time, COVID, but was refused accommodation by a courthouse colleague while in the courtroom even when the chair remained empty and no one was using it.

38. On or around August 14, 2023, Wiggins began to harass and single out Plaintiff about registering with the Office of State Court Administrators roster as a registered interpreter.

39. Around this same time, Wiggins began to harass and single out Plaintiff threatening her that if she did not take the oral test by October, 2023 she would no longer be able to continue her employment with the Nineteenth Judicial Circuit even though many of Plaintiff's colleagues had been employed and/or contracted for longer than a year without obtaining certification.

40. Registering to take the interpreting oral test is different from registering to obtain court "interpreter registration status" which is when the interpreter's name appears in a roster managed by Tallahassee.

41. Plaintiff reminded Wiggins that Funcke did not have "court interpreter registration status" with the Office of the State Court Administrator in Florida, and Wiggins asked her how she knew that? Plaintiff told her that it was public information.

42. Shortly thereafter, Funcke updated his Tier 1 "registered status" in the State of Arizona (not Florida) to a Tier 2 and changed his address from Victorville, California to West Palm Beach, Fla.

43. On August 22nd, 2023, Plaintiff sent Tamara Thompson, the Human Resources manager for the Nineteenth Judicial Circuit, an email complaining and requesting a meeting with Thompson. Plaintiff's email was ignored. Plaintiff also called and sent a text message to Thompson but her text messages and calls were also ignored.

44. Shortly thereafter, on the same day, Plaintiff was terminated from her employment.

**COUNT I**
Disability Discrimination under the Americans with Disabilities Act

45. Plaintiff re-alleges ¶¶ 1-44.

46. Defendant discriminated against Plaintiff on account of disability in violation of the Americans with Disabilities Act.

47. As a direct and proximate result of Defendant's unlawful and discriminatory acts, Plaintiff was caused to suffer loss of earnings, loss of State benefits, merit and salary

increases, loss of earning capacity, loss of enjoyment of life, injury to reputation, and severe emotional distress.

48. Plaintiff has retained counsel to represent her in the foregoing action and is obligated to compensate them for their services.

Wherefore, Plaintiff seeks the following relief:

A. Declare The Nineteenth Judicial Circuit of Florida's conduct to be violations of Monika Golden's rights under the Americans with Disabilities Act;

B. Award restitution damages for loss of earnings for all lost wages including merit increases, loss of promotional opportunity, benefits, and other renumeration;

C. Award compensatory damages to Monika Golden for her pain and suffering;

D. Award Monika Golden punitive damages as punishment for The Nineteenth Judicial Circuit of Florida's willful violations of the Americans with Disabilities Act and as a deterrent to others;

E. Award Monika Golden her costs and attorney's fees;

F. Award Monika Golden pre-judgment and post-judgment interest as permitted by applicable law; and

G. Grant such other and further relief as may be deemed just and proper.

## COUNT II
Disability Discrimination under the Rehabilitation Act

40. Plaintiff re-alleges ¶¶ 1-44.

41. Defendant discriminated against Plaintiff on account of disability in violation of the Rehabilitation Act.

42. As a direct and proximate result of Defendant's unlawful and discriminatory acts, Plaintiff was caused to suffer loss of earnings, loss of State benefits, merit and salary increases, loss of earning capacity, loss of enjoyment of life, injury to reputation, and severe emotional distress.

43. Plaintiff has retained counsel to represent her in the foregoing action and is obligated to compensate them for their services.

Wherefore, Plaintiff seeks the following relief:

A. Declare The Nineteenth Judicial Circuit of Florida's conduct to be violations of Monika Golden's rights under the Rehabilitation Act;

B. Award restitution damages for loss of earnings for all lost wages including merit increases, loss of promotional opportunity, benefits, and other renumeration;

C. Award compensatory damages to Monika Golden for her pain and suffering;

D. Award Monika Golden punitive damages as punishment for The Nineteenth Judicial Circuit of Florida's willful violations of the Americans with Disabilities Act and as a deterrent to others;

E. Award Monika Golden her costs and attorney's fees;

F. Award Monika Golden pre-judgment and post-judgment interest as permitted by applicable law; and

G. Grant such other and further relief as may be deemed just and proper.

## COUNT III
Disability Discrimination under the Florida Civil Rights Act

44. Plaintiff re-alleges ¶¶ 1-44.

45. Defendant discriminated against Plaintiff on account of disability in violation of the Florida Civil Rights Act.

46. As a direct and proximate result of Defendant's unlawful and discriminatory acts, Plaintiff was caused to suffer loss of earnings, loss of State benefits, merit and salary increases, loss of earning capacity, loss of enjoyment of life, injury to reputation, and severe emotional distress.

47. Plaintiff has retained counsel to represent her in the foregoing action and is obligated to compensate them for their services.

Wherefore, Plaintiff seeks the following relief:

A. Declare The Nineteenth Judicial Circuit of Florida's conduct to be violations of Monika Golden's rights under the Florida Civil Rights Act;

B. Award restitution damages for loss of earnings for all lost wages including merit increases, loss of promotional opportunity, benefits, and other renumeration;

C. Award compensatory damages to Monika Golden for her pain and suffering;

D. Award Monika Golden punitive damages as punishment for The Nineteenth Judicial Circuit of Florida's willful violations of the Americans with Disabilities Act and as a deterrent to others;

E. Award Monika Golden her costs and attorney's fees;

F. Award Monika Golden pre-judgment and post-judgment interest as permitted by applicable law; and

G. Grant such other and further relief as may be deemed just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury of all issues so triable as a matter of right.

**DATED APRIL 26, 2024**                              **FOR PLAINTIFF:**

BY: /s/ G. Ware Cornell, Jr.
G. Ware Cornell, Jr
Fla. Bar No.: 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive
Weston, Fla. 33331
T: (954) 618-1041